## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FRANCES KIRBY and JOHN DAVID MARKS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHEM, INC., BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., ANTHEM INSURANCE COMPANIES, INC.,<br><br>    Defendants, | Case No.:<br><br>**COMPLAINT – CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Frances Kirby and John David Marks ("Plaintiffs"), individually and on behalf of the Class defined below, allege the following against Defendants Anthem, Inc., Blue Cross and Blue Shield of Georgia, Inc. and Anthem Insurance Companies (collectively referred to as "Anthem") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigations of counsel and review of public documents as to all other matters.

## SUMMARY OF THE CASE

1.      This case is being brought on behalf of individuals across the State of Georgia against Anthem for engaging in a health insurance coverage marketing scheme that involved Anthem making material misrepresentations and omissions to consumers about the scope of its health insurance coverage.  Anthem's scheme was designed to generate profits by misleading Georgia consumers purchasing individual and family health insurance policies[1] ("Individual insurance") into believing at the time of sale that Georgia's largest healthcare provider, WellStar Health System, Inc. ("WellStar"), was an in-network covered provider when Anthem knew that it was not going to be during the pertinent coverage period in 2019.

2.      Specifically, during the most recent open enrollment period, which was from November 1, 2018 to December 15, 2018, Anthem made uniform misrepresentations and omissions to consumers as well as its independent brokers during the enrollment process that WellStar would be an available provider to policyholders in Anthem's Pathway Health Plan.  Unbeknownst to consumers, however, at the time of open enrollment, Anthem had already notified WellStar in August 2018 that it would not be providing coverage for WellStar's services

---

[1]  Consumers who are not eligible for group health insurance coverage through an employer may purchase individual and family health insurance.

during the relevant coverage period in 2019.  Anthem concealed this material fact from consumers for the purpose of inducing them to select Anthem as their healthcare provider.

3.      Plaintiffs, who are residents of northwest metro-Atlanta, and others similarly situated enrolled with Anthem because the company represented that it would be covering services provided by WellStar, which is the largest health care provider in Georgia and virtually the exclusive health care provider in northwest metro-Atlanta.

4.      Anthem knew at the time that it made the misrepresentations and omissions that consumers select their health insurance company based on whether the services of their existing health care provider would be covered by the insurance.  As explained in more detail below, Anthem is the only health insurance provider in forty-four (44) mostly rural counties in Georgia. Providing those residents with access to WellStar, Georgia's largest health network, would be important to them.   Stated differently, excluding WellStar from Anthem's in-network coverage is a material fact to all of Anthem's Pathway policyholders.

5.      As described below in more detail, during the enrollment period, Anthem used uniform misrepresentations on its website as well as in its health insurance application and contract provided to Plaintiffs that WellStar would be "in network," i.e., that Plaintiff's would have coverage for expenses incurred with

WellStar.  Anthem tells prospective policyholders to use the provider finder tool on its website, www.anthem.com, to determine which physicians and providers are in-network for Anthem's health insurance plans.  Anthem's provider finder tool, however, has many inaccuracies and many of the providers listed do not accept Anthem's Pathway Health Plan.  In addition, as part of the application process, Plaintiffs and others similarly situated were required by Anthem's uniform intake process to select primary care physicians, which included WellStar doctors. Anthem then issued health insurance cards to Plaintiffs identifying the WellStar primary care physician by name, all the while knowing that Anthem did not intend to include them as an in-network provider.

6.     Now that Plaintiffs have paid health insurance premiums to Anthem, and the open enrollment period is closed, which locks Plaintiffs in until the next open enrollment period in November 2019, Anthem pulled the rug out from under the Plaintiffs and is now no longer including WellStar as an in-network provider. Plaintiffs are now expected to continue paying Anthem's premiums for a health insurance product that Plaintiffs would not have purchased had they known the truth, and if Plaintiffs want to continue using their existing WellStar doctors, they will have to pay the full price for medical treatment, as if they did not have any health insurance at all.

7.    While Plaintiffs could also change to a new physician in another health system, Plaintiffs have longstanding medical relationships with their WellStar doctors, including WellStar specialists, who treat Plaintiffs with long-term, serious medical problems such as cancer and heart conditions.  Furthermore, WellStar is the largest health care system in Georgia and is by far the most prominent health care system in northwest metro-Atlanta.   According to its website:

> WellStar Health System is a non-profit system founded in 1993 providing comprehensive care in Metro Atlanta, Georgia, United States.
>
> At WellStar Health System, our momentum is sustained by the compassionate care delivered by the more than 20,000 team members at our 11 hospitals, more than 250 medical office locations, and our multiple outpatient facilities. And in 2017, our impact in the communities we serve was truly extraordinary.
>
> https://www.wellstar.org/community/documents/wellstar-community-benefits-report.pdf

As a result, Anthem's deceptive business practices of misrepresenting that WellStar would be an in-network provider caused Plaintiffs to enroll with Anthem.

8.    Anthem knew at the time that open enrollment began in November 2018 that WellStar would not be an in-network provider, as evidenced by the fact that WellStar recently disclosed that Anthem informed WellStar in August 2018 that WellStar would not be an available in-network provider. Despite this fact, Anthem continued to represent to consumers the opposite.

9.     Based on the allegations above and below, Plaintiffs and the putative Class Members are seeking to certify a Georgia class to hold Anthem responsible for the damage caused to them by Anthem's deceptive conduct.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members[2], and some of the Defendants have a different citizenship from Plaintiffs.

---

[2] Plaintiffs have a good faith basis to allege damages in excess of $5 million and that thousands of consumers in the State of Georgia have been damaged by Anthem's deceptive scheme.  For example, in January 2018, multiple news outlets in the metro Atlanta market reported that thousands of consumers in northwest metro Atlanta were damaged by Anthem not including WellStar as an in-network provider.  *See* Atlanta Journal Constitution article dated Jan. 19, 2019, entitled *Blow for ACA patients: Anthem/Blue Cross individuals lose Wellstar*, ("Thousands of Georgia Obamacare customers who just signed up for 2019 coverage with the state's biggest health insurance company are getting a surprise"), https://www.ajc.com/news/state--regional-govt--politics/blow-for-aca-patients-anthem-blue-cross-individuals-lose-wellstar/zvRZOKGmiYyVGo8S7YwrIL/.  *See also* Marietta Daily Journal article dated Jan. 29, 2019, entitled *With five days left to negotiate, patients 'frustrated' as WellStar, Anthem near end of contract* ("This coming Monday, the day after the Super Bowl is played in Atlanta, thousands of Georgians who signed up for insurance exchange or individual coverage from Anthem will face much higher costs for using WellStar hospitals and physicians. Those providers will be out of network Feb. 4"), https://www.mdjonline.com/news/with-five-days-left-to-negotiate-patients-frustrated-as-wellstar/article_638faef6-23ef-11e9-8df5-0763a08b1fc0.html.

11.    This Court has personal jurisdiction over Anthem because the defendant companies regularly conduct business in Georgia and have sufficient minimum contacts with Georgia.  Anthem also intentionally availed itself of this jurisdiction by marketing and selling health insurance products and services and by accepting and processing payments for those products and services within Georgia.

12.    Venue is proper within this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Blue Cross and Blue Shield of Georgia, Inc.'s principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' and Class Members' claims occurred in this District.

## **PARTIES**

13.    Plaintiff Frances Kirby is a resident Cobb County, Georgia.

14.    Plaintiff John David Marks is a resident Cobb County, Georgia.

15.    Defendant Anthem, Inc. is an Indiana corporation with its principal place of business located at 120 Monument Circle, Indianapolis, Indiana 42604.

16.    Defendant Blue Cross and Blue Shield of Georgia, Inc. is a Georgia corporation with its principal place of business located at 120 Monument Circle, Indianapolis, Indiana 42604.

17.    Defendant Anthem Insurance Companies, Inc. is an Indiana corporation with its principal place of business located at 120 Monument Circle, Indianapolis, Indiana 42604.

18.    At all times material, Defendants, individually and in concert with each other, operated, conducted, engaged in or carried on a business or business venture in Georgia.  Defendants, individually and in concert with each other, committed tortious acts within Georgia. At or about the time of the injury to Plaintiffs and Class Members, Defendants, individually and in concert with each other, engaged in solicitation or service activities within the state of Georgia that caused injury to Plaintiffs.  The injury occurred within Georgia and arose out of act or omission by Defendants inside and outside of Georgia.  Furthermore, this Court has personal jurisdiction over Defendants because one or more of them contracted to insure Plaintiffs within Georgia.  Finally, Defendants engaged in substantial and not isolated activity within Georgia and could reasonably anticipated being haled into court in Georgia.

## STATEMENT OF FACTS

**A.    Anthem is the largest health insurance provider in the State of Georgia.**

19.    Anthem, Inc. is a publicly traded company and according to its most

recent Form 10-K, the company touts:

> We are one of the largest health benefits companies in the United States in terms of medical membership, serving 40.2 million medical members through our affiliated health plans as of December 31, 2017. […] In a majority of these service areas, we do business as Anthem Blue Cross, Anthem Blue Cross and Blue Shield, <u>Blue Cross and Blue Shield of Georgia</u> and Empire Blue Cross and Blue Shield or Empire Blue Cross.  (emphasis added).
> …
>
> Overall, we seek to establish pricing and product designs to provide value for our customers while achieving an appropriate level of profitability for each of our customer categories balanced with the competitive objective to grow market share. […]  We market our products through direct marketing activities and an extensive network of independents agents, brokers and retail partnerships for Individual and Medicare customers, and for certain local group customers with a smaller employee base.  See Form 10-K, Anthem, Inc. (Dec. 2017).

20.    Anthem holds itself out to independent agents, brokers and to its retail

partnership partners as the largest and oldest health benefits provider in Georgia

and that almost one-third of Georgia's population carries one of Anthem's cards.

Below is a chart showing how prevalent Anthem's Pathway HMO is in the State:

| County | Only Provider | Plan Type | County | Only Provider | Plan Type |
|---|---|---|---|---|---|
| Morgan | Yes | Pathway HMO | Hall | No | Pathway HMO |
| Oglethorpe | Yes | Pathway HMO | Hart | No | Pathway HMO |
| Bartow | No | Pathway HMO | Lumpkin | No | Pathway HMO |
| Cherokee | No | Guided Access HMO | Rabun | No | Pathway HMO |
| Cobb | No | Guided Access HMO | Stephens | No | Pathway HMO |
| Coweta | No | Pathway HMO | Towns | No | Pathway HMO |
| DeKalb | No | Guided Access HMO | Union | No | Pathway HMO |
| Douglas | No | Guided Access HMO | White | No | Pathway HMO |
| Fayette | No | Guided Access HMO | Atkinson | Yes | Pathway HMO |
| Forsyth | No | Guided Access HMO | Johnson | Yes | Pathway HMO |
| Fulton | No | Guided Access HMO | Laurens | Yes | Pathway HMO |
| Gwinnett | No | Guided Access HMO | Crawford | Yes | Pathway HMO |
| Henry | No | Guided Access HMO | Chattooga | No | Pathway HMO |
| Jasper | Yes | Pathway HMO | Floyd | No | Pathway HMO |
| Lamar | No | Pathway HMO | Gilmer | No | Pathway HMO |
| Pike | No | Pathway HMO | Pickens | No | Pathway HMO |
| Carroll | Yes | Pathway HMO | Polk | No | Pathway HMO |
| Haralson | Yes | Pathway HMO | Berrien | Yes | Pathway HMO |
| Heard | Yes | Pathway HMO | Brooks | Yes | Pathway HMO |
| Burke | Yes | Pathway HMO | Clinch | Yes | Pathway HMO |
| Columbia | Yes | Pathway HMO | Colquitt | Yes | Pathway HMO |
| Emanuel | Yes | Pathway HMO | Cook | Yes | Pathway HMO |
| Glascock | Yes | Pathway HMO | Decatur | Yes | Pathway HMO |
| Jefferson | Yes | Pathway HMO | Early | Yes | Pathway HMO |
| Jenkins | Yes | Pathway HMO | Echols | Yes | Pathway HMO |
| Lincoln | Yes | Pathway HMO | Grady | Yes | Pathway HMO |
| McDuffie | Yes | Pathway HMO | Lanier | Yes | Pathway HMO |

| | | | | | |
|---|---|---|---|---|---|
| Richmond | Yes | Guided Access HMO | Lowndes | Yes | Pathway HMO |
| Taliaferro | Yes | Pathway HMO | Seminole | Yes | Pathway HMO |
| Warren | Yes | Pathway HMO | Thomas | Yes | Pathway HMO |
| Wilkes | Yes | Pathway HMO | Tift | Yes | Pathway HMO |
| Charlton | Yes | Pathway HMO | Turner | Yes | Pathway HMO |
| Ware | Yes | Pathway HMO | Baldwin | Yes | Pathway HMO |
| Upson | Yes | Pathway HMO | Hancock | Yes | Pathway HMO |
| Fannin | No | Pathway HMO | Washington | Yes | Pathway HMO |
| Banks | No | Pathway HMO | Wilkinson | Yes | Pathway HMO |
| Dawson | No | Pathway HMO | | | |
| Franklin | No | Pathway HMO | | | |
| Habersham | No | Pathway HMO | | | |

21.  As shown above, approximately forty-four (44) counties, many of them rural, rely solely on Anthem's Pathway HMO to provide health insurance coverage to its residents.  It logically follows that the excluding WellStar, Georgia's largest health system in the State is a material fact to Anthem's Pathway policyholders.

**B.    In 2017, Anthem left the Individual and Family health insurance marketplace in metro-Atlanta.**

22.    According to news reports in August of 2017, Anthem pulled out of the metro-Atlanta Individual health insurance market citing federal uncertainty about the future of the Affordable Care Act.  After intense negotiations with state regulators, Anthem continued to provide service in South Georgia counties where there was no other health insurance provider.  *See* Atlanta Journal Constitution, *Blue Cross pulls back on Georgia coverage*, Aug. 7, 2017.  The article goes on to

illustrate the frustration that Anthem's retreat from the metro-Atlanta market caused residents of northwest metro-Atlanta.  For example, Marc Morton, a Cobb County resident whose wife and daughter have pre-existing conditions and got their insurance at the time from Anthem on the exchange, was quoted:

> My wife was in a panic, he said.  I looked at it and I thought, well this is just something that has to be overcome somehow.  *Id.*

23.    As a result of Anthem's departure from the northwest metro-Atlanta market (and WellStar) in 2018, residents of the area who purchased individual health insurance policies had to switch from Anthem to either Kaiser Permanente or Ambetter.  Kaiser has its own network of doctors and Ambetter covered WellStar Health System as an in-network provider.

24.    Both Kaiser and Ambetter had a much smaller network of physicians and medical facilities statewide than Anthem had.  For example, Ambetter, a health insurance company that previously only insured Medicaid patients, expanded into the individual coverage market in 2018, and while WellStar was a covered service provider, patients who may have been in need of specialized care, such as severe spinal injuries, were precluded from being able to go to nationally renowned health care facilities, such as The Shepherd Center in Atlanta.  Anthem, on the other hand, provided coverage for treatment facilities such as The Shepherd Center.

25.    It is therefore understandable that when Anthem announced that it was reentering the metro-Atlanta health care market during the late 2018 open

enrollment period, patients in need of individual health insurance looked at Anthem, with its more expansive network, as a preferred choice to the alternatives – i.e., Ambetter and Kaiser.

**C.    In 2018, Anthem reintroduced itself as a health insurance provider to northwest metro-Atlanta counties whose patients rely on WellStar Health Systems to provide medical services.**

26.    Prior to the open enrollment period beginning in November 2018, Anthem made the business decision to renter the metro-Atlanta health insurance market.  As explained in the January 2, 2019 AJC article entitled *Sometimes, Georgia health care costs are a simple matter of location*, insurance companies such as Anthem reentered the market by narrowing their networks, striking better deals but with fewer hospitals and doctors.[3]  The article states: "Consumers may wind up paying more money, having fewer choices or sometimes both. […] Experts study all those powerful forces, and they don't know how the consumer can get out of the middle."  The article goes on the state:

> In 2017, Blue Cross Blue Shield of Georgia made a dramatic decision to pull out of metro-Atlanta.  In 2018, it decided to come back, but not all the way: it returned to the entire metro region except for Clayton and Rockdale.  It also stayed out of dozens of rural Georgia counties it initially proposed to enter after seeing competitors' proposals to do business there.  *Id.*

27.    Upon information and belief, Anthem engaged in the same type of sharp business practices described above in its dealings with WellStar to negotiate

---

[3] https://www.ajc.com/news/state--regional-govt--politics/sometimes-georgia-health-care-costs-are-simple-matter-location/y3SeqD68Kf9TewVE1IpbpL/

including WellStar as an Anthem in-network provider in its Pathway Individual health plan. Presumably, after initially deciding to enter the metro-Atlanta market, after seeing competitors' proposals to do business with WellStar, Anthem terminated negotiations with WellStar and made the business decision that it was not going to include WellStar as an in-network provider during the pertinent coverage in 2019. WellStar contends that this occurred in a document that it published on its website, entitled *Update on Anthem/Blue Cross Blue Shield's affordable health care exchange plan*, which stated in pertinent part:

> In August 2018, Anthem/Blue Cross Blue Shield notified us that they were terminating WellStar as a participating provider in their Pathway product available through the Affordable Health Care Exchange. We immediately disputed this action, and are pursuing all contractual rights we have to resolve this issue. But it appears unlikely that WellStar will be participating past Feb. 4, 2019.
>
> We understand how difficult this is for patients who chose WellStar hospitals and physicians.
>
> And while WellStar normally notifies affected patients about a cancelled contract to permit them to make informed decisions about their healthcare needs, we were not able to notify Anthem/Blue Cross Blue Shield members of this change, as we do not have a listing of individuals who signed up for its Anthem plan. That is because Anthem/Blue Cross Blue Shield pulled out of the ACA health insurance exchange in metro Atlanta at the end of 2017. So WellStar had no metro Atlanta Pathway patients in 2018.
>
> See attached Exhibit 1.

28.    Despite the fact that Anthem informed WellStar in August 2018 that it would not be including WellStar as an in-network provider for its individual health

plans during the 2019 coverage period, as explained above and below, Anthem never informed consumers of this fact and engaged in a deceptive marketing scheme to continue to list WellStar providers as in-network during the open enrollment period.

**D.     Even though Anthem knew by August 2018 that it was not going to include WellStar as an in-network provider for its Pathway health insurance plan, Anthem continued to use its marketing materials disseminated to their agents as well as on its website falsely representing that WellStar physicians and facilities would be in-network providers for Anthem's Pathway health insurance plan.**

29.     As alleged above, Anthem states in its most recent Form 10-K that "we market our products through direct marketing activities [including on its website] and an extensive network of independents agents, brokers and retail partnerships for Individual and Medicare customers.  See Anthem's Form 10-K, Dec. 2017.

30.     Upon information and belief, prior to and during the open enrollment period beginning on November 1, 2018, Anthem disseminated uniform deceptive marketing materials to its independent agents that falsely claimed that WellStar was going to be an in-network health care provider in its Pathway health insurance plan.

31.     Upon information and belief, prior to the end of the open enrollment period, which closed on December 15, 2018, Anthem did not inform its

independent agents that it had terminated WellStar as an in-network provider and allowed their independent agents to further the misinformation to consumers and deceive them into purchasing the Pathway health insurance plan based on false information.

32.    In addition, Anthem used its website, which upon information and belief, is operated through Defendant Anthem Insurance Companies, Inc.[4] to further its scheme by providing consumers with a tool to "Find A Physician" that falsely included WellStar physicians as in-network and failed to inform consumers that their coverage was terminated and would no longer be in-network after February 4, 2019, approximately a month after the new policy was issued.

33.    In addition, for Plaintiffs and Class Members who enrolled in Anthem's Pathway plan through Anthem's website, Anthem furthered its scheme by requiring new policyholders to select a primary care physician.  Plaintiffs and Class Members therefore selected WellStar physicians as their primary care physician, not knowing that those physicians would not be in-network beyond February 4, 2019.  Anthem went so far as to list those WellStar primary care physicians by name on some or all the Plaintiffs' health insurance cards, which not

---

[4] According to Anthem's website at www.anthem.com, Defendant Anthem Insurance Companies, Inc. holds the copyright for the contents of the website and affirmatively states that the company services Georgia.  See www.anthem.com.

only furthered the deceptive marketing scheme, but also incorporated the WellStar

primary care physician as part of the contract with Anthem.

**E.    Anthem has engaged in similar deceptive conduct in other parts of the United States.**

34.    Approximately four years ago, the State of California conducted an

audit of Anthem/Blue Cross Blue Shield's networks and, according to an article

published by Consumer Watchdog, the audits confirmed that Blue Shield and Blue

Cross in California dramatically misrepresented the number of doctors available to

consumers under new Obama health care plans.[5]    According to the article, the

audits found that at least 25% of physicians listed by Anthem/Blue Cross and Blue

Shield of California were not taking patients enrolled in Obamacare plans or are no

longer at the location listed by the companies.    *Id.*    A victim of this scheme is

quoted describing their experience as follows:

> When my wife and I enrolled in our new Blue Shield health plan it
> was important to us that our long-time physicians were included in
> our plan's network. […]  Before enrolling we confirmed through Blue
> Shield's website that our doctors were 'in-network' and we even
> called our doctors to double-check.  It was only after we visited our
> doctors for routine check-ups that the bills started rolling in informing
> us for the first time that our doctors were in fact out of network and
> Blue Shield was only covering a fraction of the cost.  Adding insult to
> injury, when we called Blue Shield to complain we experienced hold
> times of two to four hours each time we called.  I feel Blue Shield is

---

[5] https://www.consumerwatchdog.org/newsrelease/state-audits-confirm-blue-shield-and-blue-cross-misled-consumers-about-doctors-available

trying to get away with a blatant 'bait and switch' and I won't stand for it! *Id.*

35.    Upon and information and belief, the class action lawsuits filed in California based on a similar deceptive scheme as here settled for approximately $23 million, and Anthem agreed to make business changes going forward to prevent future problems in California.

## PLAINTIFFS' EXPERIENCE

**A.    Plaintiff Frances Kirby was fraudulently induced into purchasing an Anthem Pathway health insurance plan.**

36.    In and around November 2018, in preparation for and during the Affordable Care Act Open Enrollment Period, Frances Kirby began researching health insurance plans. She researched plans available in her area and learned that there were three companies, including Anthem, offering plans in Cobb County, Georgia.  Ambetter, her health insurer for 2018, was also offering health insurance.

37.    Ms. Kirby has had the same primary care physician, Dr. James Elsbree, a WellStar physician, for over twenty (20) years and sees him regularly for routine physicals and various health issues not requiring a specialist. In addition, Ms. Kirby has several significant health issues which require nine (9) different specialists. The majority of these specialists are WellStar physicians. The primary factor in determining which health insurance plan Ms. Kirby would

choose was whether her primary care physician and other specialists were in-network providers.

38.    Prior to enrolling in any plan, Ms. Kirby visited Anthem's website and used the provider search tool to determine whether Dr. Elsbree and her other specialists were in-network.  Identical to her 2018 coverage with Ambetter, Ms. Kirby's primary care and specialists were deemed in-network providers. Ms. Kirby then compared the overall general network of providers of Anthem with Ambetter and Anthem's representations made it appear as though the Anthem's network of providers was more expansive than Ambetter's.

39.    Based upon Anthem's representations that her primary care physician and specialists were in-network and Anthem's representations that their in-network far surpassed Ambetter's in-network coverage, Ms. Kirby made the decision to switch from Ambetter to Anthem and enroll in Anthem's Gold Pathway X Guided Access HMO plan.

40.    Ms. Kirby's Anthem plan does not provide coverage for out-of-network providers. However, Ms. Kirby was not concerned with this fact given her primary care provider and specialists were listed as in-network by Anthem.

41.    As required by Anthem's application process, Ms. Kirby designated Dr. James Elsbree, a Wellstar Health Systems physician, as her primary care

physician and Anthem approved this selection and placed Dr. Elsbree on her Anthem insurance card.

42.    Ms. Kirby's Gold Pathway X Guided Access HMO plan began on January 1, 2019 and the contract ends on December 31, 2019.

43.    On or about January 10, 2019, Ms. Kirby, while in Dr. Elsbree's office, was notified by Dr. Elsbree's staff that Anthem had terminated their relationship with WellStar and that Dr. Elsbree would not be considered an in-network provider as of February 4, 2019. It was at this point that Ms. Kirby also realized that if this information were true that the majority of her medical specialists would also not be considered in-network providers given that they too were WellStar providers.

44.    Ms. Kirby had not received any notice from Anthem regarding their termination of WellStar and/or its providers as an in-network provider despite the fact that her primary care physician listed on her Anthem insurance card is a WellStar physician and many of the specialists that provide her with treatment are WellStar physicians as well.

45.    Upon receiving the information from Dr. Elsbee's office, Ms. Kirby again used the provider search tool on Anthem's website and Dr. Elsbree was listed as an in-network provider. She contacted Anthem with her confusion and frustration and was advised that Anthem's internal computer information differed

from the information that Anthem provided consumers through its website and provider search tool.

46.    While Anthem failed to adequately notify Ms. Kirby that Wellstar Health System would no longer be considered in-network, Ms. Kirby was able to confirm her fears through a press release from WellStar, attached as Exhibit 1, that explained that Anthem had terminated Wellstar Health System as a participating in-network provider for the Pathway product available through the Affordable Health Care Exchange.

47.    Because Ms. Kirby's primary care physician and several of her specialists are WellStar providers, Ms. Kirby will now have to search for a new primary care physician and several new medical specialists.   This will assuredly cause a lapse in Ms. Kirby's medical treatment while she conducts a search for in-network providers that she is comfortable with and who are taking new patients.

48.    The number of specialists who are Anthem in-network providers are significantly less from the providers Anthem represented as in-network when Ms. Kirby was researching health insurance plans. In addition, the majority of specialists in Ms. Kirby's area are WellStar Health System physicians. This will make finding a specialist in Ms. Kirby's area more difficult. Given Ms. Kirby's health, traveling will put an additional strain on her health.

49.    Further, Ms. Kirby anticipates that once she selects new providers, she will experience a significant delay in being able to be seen by these providers given she is a new patient. In her experience, new patients may not be able to get in with a specialist for an initial visit for a couple of months or more. Further, obtaining Ms. Kirby's complete medical records from all of her providers, which include examinations over the years and numerous test and lab results, some going back twenty (20) years, may prove extraordinarily difficult and may take significant time especially since any new providers will not be Wellstar Health System providers who have easy electronic access to Wellstar records. All of this will cause an undue delay in medical treatment for Ms. Kirby and her various medical issues. Any delay in medical treatment for Ms. Kirby may significantly worsen her medical conditions and may require additional and likely serious medical treatment.

50.    Ms. Kirby also believes that even after being seen by these new providers, like any new patient, she will likely endure medical testing and examinations, she has already undergone, in order that the new provider can get up to speed as to her medical conditions and formulate a treatment plan. This will cause unnecessary repetitive testing and additional delay in medical treatment.

51.    Ms. Kirby will also have to incur additional medical expenses as a result of the additional medical visits and testing she anticipates as a result of the switch to new providers.

52.    Ms. Kirby has also had to endure hospitalizations for her medical conditions. WellStar is the only hospital in Cobb County, Georgia. With WellStar terminated as an in-network provider, Ms. Kirby will have to travel outside her area to another county should she require future hospitalizations.

53.    Ms. Kirby is locked in with Anthem's Gold Pathway X Guided Access HMO plan until the end of 2019. She is not allowed to switch mid-contract to another health insurance provider. Therefore, in order to maintain health insurance, she will have to remain with Anthem and continue to pay her monthly premiums despite the fact that she will be unable to receive treatment from the providers Anthem misrepresented were in-network.

54.    Ms. Kirby would not have switched from Ambetter to Anthem had Anthem not misrepresented that her health providers and the only hospital in her area were Anthem in-network providers.

**B.    Plaintiff John David Marks was fraudulently induced into purchasing an Anthem Pathway health insurance plan.**

55.    In and around November 2018, after receiving a renewal letter from his existing Ambetter health insurance provider, Plaintiff Marks began researching health insurance plans on the Affordable Care Act website, www.healthcare.gov.

Plaintiff Marks researched plans available in his area and learned that there were three companies, including Anthem, offering health service plans in Cobb County, Georgia. Ambetter, his health insurer for 2018, was also offering health service plans.

56.    Plaintiff Marks was diagnosed with prostate cancer in October 2016. Since that time, he has received medical treatment by WellStar specialists for his cancer.  In addition, Mr. Marks has long term cardiac problems including having had a heart attack and being diagnosed with atrial fibrillation in 2004 and has been under cardiac care with WellStar specialists since then. A primary reason that Plaintiff chose to enroll with Anthem was that his specialists were in-network providers and the premiums advertised by Anthem were approximately $200 per month less expensive than his Ambetter's policy.

57.    Prior to enrolling in any plan, in November 2018, Mr. Marks visited Anthem's website and used the provider search tool to determine whether his primary care physician and his specialists and hospitals were in-network. Mr. Marks confirmed on Anthem's website that his primary care physician and specialists were included as in-network providers.

58.    Based upon Anthem's representations that his primary care physician and specialists were in-network, Mr. Marks made the decision to switch from

Ambetter to Anthem and enroll in Anthem's Bronze Pathway X Guided Access HMO plan.

59.    Mr. Marks' Anthem plan does not provide coverage for out-of-network providers. However, he was not concerned with this fact given his primary care provider and specialists were listed as in-network by Anthem.

60.    Mr. Mark's Bronze Pathway X Guided Access HMO plan began on January 1, 2019 and the contract ends on December 31, 2019.

61.    On February 5, 2019, Mr. Marks had a scheduled visit with his WellStar urologist in connection with monitoring his prostate cancer. During the last week of January 2019, however, Mr. Marks spoke with his urologist office to confirm that they were in-network with Anthem. When he told them that he had just switched to Anthem Pathway, the office informed him that Anthem terminated their relationship with WellStar and that the urologist's office would not accept Anthem's insurance after February 4, 2019.  As a result, Mr. Marks was forced to cancel his appointment. It was at this point that Mr. Marks also realized that if this information were true that the majority of his medical specialists would also not be considered in-network providers given that they too were WellStar providers.

62.    Because Mr. Marks specialists are WellStar providers, Mr. Marks will now have to search for new medical specialists. This will assuredly cause a lapse in

Mr. Marks' medical treatment while he conducts a search for in-network providers that he is comfortable with and who are taking new patients.

63.     The number of specialists who are Anthem in-network providers are significantly less from the providers Anthem represented as in-network when Mr. Marks was researching health insurance plans. In addition, the vast majority of specialists in Mr. Marks' area are WellStar physicians. In addition, Mr. Marks has determined that the closest hospital that he has access to is in mid-town Atlanta, over 25 miles from his home, which is extremely concerning given that he has heart problems and may require a closer hospital like WellStar's that is only five miles from his home.

64.     Further, Mr. Marks anticipates that once he selects new providers, he will experience a significant delay in being able to be seen by these providers given he is a new patient. In his experience, new patients may not be able to get in with a specialist for an initial visit for a couple of months or more. This will cause an undue delay in medical treatment for Mr. Marks and his various medical issues.

65.     Mr. Marks also believes that even after being seen by these new providers, like any new patient, he will likely endure medical testing and examinations, he has already undergone, in order that the new provider can get up to speed as to his medical conditions and formulate a treatment plan. This will cause unnecessary repetitive testing and additional delay in medical treatment.

66.    Mr. Marks will also have to incur additional medical expenses as a result of the additional medical visits and testing he anticipates as a result of the switch to new providers.

67.    Mr. Marks has also had to endure hospitalizations for his medical conditions. WellStar Health System is the only hospital in Cobb County, Georgia. With WellStar Health Systems terminated as an in-network provider, Mr. Marks will have to travel to mid-town Atlanta area should he require future hospitalizations.

68.    Mr. Marks is locked in with Anthem's Bronze Pathway X Guided Access HMO plan until the end of 2019. He is not allowed to switch mid-contract to another health insurance provider. Therefore, in order to maintain health insurance, he will have to remain with Anthem and continue to pay his monthly premiums despite the fact that he will be unable to receive treatment from the providers Anthem misrepresented were in-network.

69.    Mr. Marks would not have switched from Ambetter to Anthem had Anthem not misrepresented that his health providers and the only hospital in his area were Anthem in-network providers.

## CLASS ACTION ALLEGATIONS

70.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as members of a proposed class ("Class") initially defined as:

All Georgia residents who purchased an individual Pathway health insurance plan(s) from one or more of the Defendants during the time period of November 1, 2018 through December 15, 2018.

71.    Excluded from the Class are Defendant's employees, officers, directors; Defendant's legal representatives, successors, and assigns; any entity in which Defendant has a controlling interest; any Judge to whom the litigation is assigned and all of members of the Judge's immediate family; and all persons who timely and validly request exclusion from the Class.

72.    This action had been brought as a class action, and may properly be maintained, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and case law thereunder.

**A.**    **Plaintiff Meets the Prerequisites of Rule 23(b)(3)**

**1.    Numerosity of the Class**

73.    The Class is so numerous that individual joinder of class members is impracticable. As explained above, recent news reports by reputable media outlets such as the Marietta Daily Journal and the Atlanta Journal Constitution demonstrate that thousands of Georgia residents as a result of Anthem's deceptive scheme. The precise number of class members and their identities and addresses are unknown to Plaintiffs at this time, but such number, identity and address of each class member, can be readily ascertained from Defendants' records. Class

members may be notified of the pendency of this action by mail, supplemented (if deemed necessary of appropriate by the Court) by published notice.

> **2.** **Existence and Predominance of Common Questions of Fact and Law**

74.    There is a well-defined community of interest in common questions of law and fact that exists as to all members of the Class.  These questions predominate over the questions affecting only individual Class members.  These common legal and factual questions include:

a.    Whether Anthem's provider list for its covered plans were inaccurate;

b.    Whether inaccuracies in Anthem's provider lists misled class members;

c.    Whether Anthem engaged in uniform deceptive marketing practices, including but not limited to direct marketing online to consumers and marketing to independent agents/brokers;

d.    Whether Anthem breached its contract and the implied covenant of good faith and fair dealing with Plaintiffs and Class members by providing prospective and current members with inaccurate provider lists;

e.    Whether Anthem's wrongful conduct damaged Plaintiffs and class members; and

f.    Whether Plaintiffs and class members are entitled to damages, injunctive relief and equitable relief.

### 3.    **Typicality of Claims**

75.    Plaintiffs' claims are typical of the Class.  Plaintiffs Kirby and Marks, like other class members, were told by Anthem's website that their providers would be covered in-network, when in fact their providers were out of network. Plaintiffs' and other class members' claims therefore arise from a common course of conduct by Defendants and are based on the same legal theories.

### 4.    **Adequacy of Representation**

76.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interest of the Class, and they have retained counsel competent and experienced in complex class action litigation.   The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

### 5.    **Superiority of the Class Action**

77.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by class members are likely to exceed millions of dollars. However, while the damages suffered by each individual class member are significant, they are small in comparison to the burden and expense of individual prosecution.  Without the class action device, it would be virtually impossible for class members individually to obtain effective redress for the wrongs done to them.

78.    Furthermore, even if the class members themselves could afford such individual litigation of class members' claims, the court system could not. Individualized litigation presents a potential for inconsistent and contradictory judgments.  Individualized litigation would involve thousands of separate actions, increasing the delay and expense to all parties and to the court system.    By contrast, the class action device presents fewer management difficulties, requiring only a single adjudication of the complex legal and factual issues in this dispute, thereby providing the benefis of economy of scale, and comprehensive supervision by a single court.

79.    Plaintiffs and their counsel know of no difficulties which will be encountered in the management of this case which would preclude it being maintained as a class action.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AGAINST DEFENDANTS BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC. AND ANTHEM, INC.

80.    Plaintiffs restate and reallege Paragraphs 1 through 79 as if fully set forth herein.

81.    Defendants Blue Cross and Blue Shield of Georgia, Inc. and/or Anthem, Inc have a contractual relationship with Plaintiffs and Class members.

82.    An essential term of Defendants' contracts with Plaintiffs and Class Members is that WellStar would be an in-network provider.

83.    Anthem breached its contract with Plaintiffs.

84.    Plaintiffs and Class Members have been and will be damaged by Defendants' conduct.

## COUNT II

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC. AND ANTHEM, INC.

85.    Plaintiffs restate and reallege Paragraphs 1 through 79 as if fully set forth herein.

86.    In the event that Defendants somehow did not breach its express contract with Plaintiffs and the proposed Class Members, it breached its implied contract with those same proposed Class Members.

87.    A covenant of good faith and fair dealing is implied in every contract, including Defendants' contracts with Plaintiffs and Class Members.

88.    Where a contract vests one party with discretion, the duty of good faith and fair dealing applies, and the party exercising the discretion must do so in a manner that satisfies the objectively reasonable expectations of the other party. A party may not perform an agreement in a manner that would frustrate the basic

purpose of the agreement or deprive the other party of its rights and benefits under the agreement.

89.    It was objectionably reasonable under the circumstances for Plaintiffs and Class Members to expect that the doctors and facilities represented to them by Anthem as being in-network would in fact be in-network.  Otherwise, it would make no sense to use the Anthem Pathway plan.

90.    It was objectively reasonable under the circumstances for Plaintiff and Class Members to expect that Anthem would not, without prior notice, terminate its relationship with providers that it represented to Plaintiffs and Class members were in-network and refuse to cover charges for services provided by such providers to the Plaintiffs and Class members.

91.    Anthem's conduct alleged herein is inconsistent with the reasonable expectations of Plaintiffs and Class Members and is inconsistent with what an objectively reasonably consumer would have expected under the circumstances.

92.    Anthem has acted in a manner that frustrates the basic purpose of its contracts with the Plaintiff and Class Members and has deprived Plaintiffs and Class Members of the benefits and rights to which they are entitled under their contracts with Anthem.

93.    As a result of Defendants' misconduct, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## COUNT III
## FRAUD

94.    Plaintiffs restate and reallege Paragraphs 1 through 79 as if fully set forth herein.

95.    Anthem made material representations and/or material omissions to Plaintiffs and Class Members in connection with the sale of its health insurance product.

96.    Anthem knew its misrepresentations and omissions made to Plaintiffs and Class Members were false and/or it was reckless with respect to the same.

97.    Anthem intended for Plaintiffs and Class members to rely on its misrepresentations and/or omissions.

98.    Plaintiffs and Class Members were unaware of the inaccuracies in Anthem's misrepresentations at the time they signed up for Anthem's Pathway plan and selected their providers from Anthem's provider lists.

99.    Anthem, moreover, engaged in a "bait and switch" with regard to its inaccurate provider lists—representing that WellStar providers were in-network when it knew that that they were not in-network.

100. Plaintiffs and Class Members justifiably relied on Anthem's misrepresentations and omissions and had they known the truth, they would not have enrolled in Anthem's Pathway plan.

101.   As a direct and proximate result of Anthem's misconduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**COUNT IV**
**FRAUDULENT CONCEALMENT**

102.   Plaintiffs restate and reallege Paragraphs 1 through 79 as if fully set forth herein.

103.   Anthem knowingly failed to disclose to Plaintiffs and Class Members material facts (and affirmatively concealed those facts), namely that Anthem's provider lists were inaccurate.

104.   Anthem was under a duty to disclose all material facts in connection with selling its health insurance to consumers.  Anthem had a duty to disclose, among other things, that it had terminated its relationship with WellStar prior to the open enrollment period beginning on November 1, 2018.

105.   Anthem's omissions were material to Plaintiffs' and Class Members' decision in selecting Anthem as a health insurance provider that included WellStar as an in-network provider.

106.   Plaintiffs and Class Members justifiably relied on Anthem's omission of material facts.  Had Plaintiffs and Class Members known the truth they would not have purchased health insurance from Anthem.

107.   As a direct and proximate result of Anthem's misconduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## COUNT V

## ATTORNEY'S FEES AND EXPENSES

108.   Plaintiffs restate and incorporate as if fully set forth herein the statements contained in Paragraphs 1- 79.

109.   Pursuant to O.C.G.A. §13-6-11 and other provisions of Georgia law, Plaintiffs are entitled to recover reasonable attorney's fees and expenses of litigation by reasons of Defendants' bad faith and stubborn litigiousness which has caused Plaintiffs to incur unnecessary trouble and expense.

## COUNT VI

## PUNITIVE DAMAGES

110.   Plaintiffs restate and incorporate as if fully set forth herein the statements contained in Paragraphs 1- 79.

111.   Pursuant to O.C.G.A. §51-12-5.1, Plaintiffs are entitled to recover punitive damages from Defendants on the basis that Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the court grant Plaintiffs and all Class Members the following relief against the Defendants:

A.      An order certifying the proposed plaintiff class herein pursuant to Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel of record to represent the Class;

B.      An order that Defendants be permanently enjoined from its improper activities and practices described above;

C.      An award of damages to Plaintiffs and Class members resulting from Defendants' wrongful conduct;

D.      Restitution of all moneys, fees and interest paid by Plaintiffs and Class members because of Defendants' unfair, unlawful or fraudulent business practices complained of herein;

E.      Disgorgement by Defendants of all profits and compensation emanating from the unfair, unlawful or fraudulent business practices complained of herein;

F.      An award of any additional damages, consequential and incidental damages and costs suffered by Plaintiffs and Class members of the class because of Defendants' wrongful conduct;

G.      Prejudgment interest;

H.      Attorney's fees, costs of suit, including expert witness fees; and

I.      Such other and further legal and equitable relief, including exemplary damages, as his Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury on all matters so triable.


Dated: February 5, 2019              By: __/s/ Jason Doss_____

                                     Jason R. Doss
                                     Georgia Bar No. 227117

                                     THE DOSS FIRM, LLC
                                     The Brumby Building
                                     127 Church Street, Suite 220
                                     Marietta, GA 30060
                                     Telephone: (770) 578-1314
                                     jasondoss@dossfirm.com

                                     *Attorneys for Plaintiffs and the Proposed
                                     Class*



# UPDATE ON ANTHEM/BLUE CROSS BLUE SHIELD'S AFFORDABLE HEALTH CARE EXCHANGE PLAN



WellStar has been terminated as a provider by Anthem/Blue Cross Blue Shield in their Pathways healthcare exchange plan. This does not affect patients who have employer-provided or individual Medicare Advantage healthcare through Anthem/Blue Cross Blue Shield.

You may have seen reports that WellStar is no longer covered by Anthem/Blue Cross Blue Shield's Pathways plan, available through the Affordable Health Care Exchange. We would like to provide some facts around this matter.

In August 2018, Anthem/Blue Cross Blue Shield notified us that they were terminating WellStar as a participating provider in their Pathways product available through the Affordable Health Care Exchange. We immediately disputed this action, and are pursuing all contractual rights we have to resolve this issue. But it appears unlikely that WellStar will be participating past Feb. 4, 2019.

We understand how difficult this is for patients who choose WellStar hospitals and physicians.

And while WellStar normally notifies affected patients about a cancelled contract to permit them to make informed decisions about their healthcare needs, we were not able to notify Anthem/Blue Cross Blue Shield members of this change, as we do not have a listing of individuals who signed up for this Anthem plan. That is because Anthem/Blue Cross Blue Shield pulled out of the ACA health insurance exchange in metro Atlanta at the end of 2017. So WellStar had no metro Atlanta Pathways patients in 2018.

Please note that this in no way affects patients who have employer-provided or individual Medicare Advantage healthcare through Anthem/Blue Cross Blue Shield. WellStar's overall contract with Anthem/Blue Cross Blue Shield remains intact. All WellStar patients covered under Anthem/Blue Cross Blue Shield products, other than Pathways, will continue to have access to the entire WellStar Health System.

If you have questions about your Affordable Health Care Exchange coverage through Anthem/Blue Cross Blue Shield, you can call the customer service number on the back of your ID card.

Additionally, patients can contact the following agencies to express network concerns with Healthcare Exchange Products:

*   Healthcare.gov's Customer Service at **(800) 318-2596**; and or
*   The Georgia State Insurance Commissioner Consumer Services at **(404) 656-2070**
*   **Consumer Complaint Process** or **OCI Contact Us**.

WellStar continues to participate in the Ambetter HIE product.

EXHIBIT 1